UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DEBBIE SILVIA, et al.,

        Plaintiffs,

    v.

EA TECHINICAL SERVICES, INC., et al.,

        Defendants.

Case No. 15-cv-04677-JSC

**ORDER RE PARTIAL SUMMARY JUDGMENT**

Re: Dkt. No. 148

      Plaintiffs Debbie Silvia and John W. Vieira allege they were not paid prevailing wages or overtime by their former employers.  Currently pending before the Court is Defendants' motion for partial summary judgment on Plaintiff Debbie Silvia's prevailing wage determination.  (Dkt. No. 145.)  Having carefully reviewed the briefs and having had the benefit of oral argument on January 4, 2018, the Court GRANTS Defendants' motion in part and DENIES the motion in part.

**PROCEDURAL HISTORY**

      Plaintiffs filed their original complaint in state court for breach of various sections of the California labor code, breach of contract, failure to pay prevailing wages, recovery under public works payment bond, and unjust enrichment. (Dkt. No. 1-1.)  Plaintiff Silvia brought two additional FEHA claims – discrimination and failure to take reasonable steps to prevent sexual harassment.  (*Id*. at 27, 28.)  Defendants then removed the action to this Court based on diversity.  (Dkt. No. 1.)

      Defendant Engineering Associates ("EA") moved to dismiss Plaintiffs' original complaint for failure to state a claim.  (Dkt. No. 7.)  The Court granted EA's motion with leave to amend.  (Dkt. No. 36.)  Plaintiffs filed the First Amended Complaint ("FAC") with most of the original causes of action, including Plaintiff Silvia's two FEHA claims. (Dkt. No. 37.)  By stipulation of

United States District Court
Northern District of California

the parties, the Court granted Plaintiffs leave to file a Second Amended Complaint ("SAC") to name MCI and Verizon as new defendants, and dismissed Frontier California Inc. f/k/a Verizon California, Inc. from the action. (Dkt. No. 102 at 2.) Plaintiffs' SAC alleged nine causes of action. (Dkt. No. 103.)

Defendants MCI and Verizon ("the Verizon Defendants) then moved to dismiss Ms. Silvia's eighth and ninth claims due to Ms. Silvia's failure to file a timely complaint with DFEH. (Dkt. No. 111.) The Court granted the motion and dismissed both FEHA claims. (Dkt. No. 135.) Thereafter, EA filed a motion for summary judgment and the Verizon Defendants filed a joinder to the motion. (Dkt. Nos. 139, 143.) The parties then stipulated to Plaintiffs' voluntary dismissal of claims 3, 4, 5, 8, and 9 and the withdrawal of the summary judgment motion and joinder, which the Court granted. (Dkt. Nos. 144, 145.)

Four claims remain: breach of California Labor Code sections 1194, 1194.2, 1771, and 1774 (claim one), breach of contract (claim two), failure to pay prevailing wages (claim six), and unjust enrichment (claim seven). On October 17, 2017 Defendants filed the instant partial summary judgment motion on Ms. Silvia's prevailing wage claim. (Dkt. No. 148.)

In her October 31, 2017 opposition Ms. Silvia requested the Court deny Defendants' motion pursuant to Rule 56(d) without prejudice to it being re-filed no earlier than December 1, 2017. Ms. Silvia argued that she had noticed approximately 12 depositions for November 1 through 10, 2017 and that the depositions are necessary to sufficiently respond to Defendants' motion. (Dkt. No. 152.) The Court granted Ms. Silvia's request in part by giving her until December 8, 2017 to file a supplemental opposition incorporating any new discovery. (Dkt. No. 158.) Ms. Silvia filed a supplemental opposition brief. (Dkt. No. 159.) Defendants submitted a supplemental reply. (Dkt. No. 160.) The Court heard oral argument on January 4, 2018.

## ANALYSIS

### I. Judicial Notice

Defendants request that the Court take judicial notice of relevant excerpts of the Division of Labor Standards Enforcement ("DLSE") Public Works Manual (Exhibit A), three Department of Industrial Relations public works coverage determinations (Exhibits B-D), prevailing wage

determination NC-63-3-9-2012-1 (Exhibit E), prevailing wage determination NC-63-3-9-2007-2 (Exhibit F), prevailing wage determination NC-63-3-9-2008-1 (Exhibit G), and IRS Revenue Ruling 93-86 "Away from Home Temporarily" (Exhibit H). Defendants' request is granted given the exhibits are public records of California and federal agencies that are not "subject to reasonable dispute" and appear on a government website. *See* Fed. R. Evid. 201(b); *Cota v. Maxwell-Jolly*, 688 F. Supp. 2d 980, 998 (N.D. Cal. Feb. 24, 2010) (a court "may properly take judicial notice of the documents appearing on a governmental website.").

## II.      Summary Judgment Motion

### A.      Benchmark Date

"Workers employed on public works projects in California are entitled to be paid prevailing wages. The Department determines the prevailing rate of per diem wages. Prevailing wages are specific to the county where the work is to be performed and the particular craft, classification, and type of work involved." *Vector Res., Inc. v. Baker*, 237 Cal. App. 4th 46, 51 (2015); *see also* Cal. Lab. Code §§ 1720 (Workers on "public works" contracts for "construction, alteration, demolition, installation, or repair work" that are paid in whole or in part out of public funds must be paid "prevailing wages" for their work). The prevailing wage is set by the Director of the California Department of Industrial Relations ("the Department"). Cal. Lab. Code § 1770, 1773; *see also State Bldg. and Const. Trades Council of California v. Duncan*, 162 Cal.App.4th 289, 295 (2008). "The overall purpose of the prevailing wage law is to protect and benefit employees *on public works projects.*" *City of Long Beach v. Dep't of Indus. Relations*, 34 Cal. 4th 942, 949 (2004) (internal quotation marks and citation omitted).

The body awarding any contract for public work specifies the general wage rates in the call for bids. Cal. Lab. Code § 1773.2.; *see also State Bldg. & Const. Trades Council of California,* 162 Cal. App. 4th at 295 (*"The Director fixes the prevailing wage rates for every category of worker needed for a public works project, which are then used by public entities soliciting bids for the project"). An "awarding body" or "body awarding the contract" means department, board, authority, officer or agent awarding a contract for public work. Cal. Lab. Code § 1722. In general, "contractors must use the prevailing wage determinations in effect on the bid

1  advertisement date of the public works project." *Vector Res., Inc.*, 237 Cal. App. 4th at 51. "[I]f

2  an awarding body does not advertise the public works project for bid, other benchmark events,

3  including the first written memorialization of the agreement concerning the public works elements

4  of project or the contract governing the award of public funds" is utilized instead.  (Division of

5  Labor Standards Enforcement ("DLSE") Public Works Manual § 3.2.4 (Dkt. No. 149-1); *see also*

6  *City of Long Beach*, 34 Cal. 4th at 951 (courts should give the Department of Industrial Relation's

7  regulations "great weight").

8  Ms. Silvia performed work pursuant to the May 7, 2008 Relocation Agreement. (Dkt. No.

9  103 ¶ 70.)  Defendants agree that the relocation project is a public works project subject to

10  prevailing wage requirements; indeed, the Relocation Agreement expressly states that it is.  (Dkt.

11  No. 151-1 ¶ 10.)  Defendants move for partial summary judgment that the date of the prevailing

12  wage applicable to Ms. Silvia's work, if any, is May 7, 2008—the date of the Relocation

13  Agreement between MCI and the Santa Clara Valley Transportation Authority ("VTA").  In other

14  words, they ask the Court to rule that the May 7, 2008 Relocation Agreement establishes the

15  "benchmark" date for determining the applicability of the prevailing wage for Ms. Silvia's work.

16  They contend that because the record is undisputed that there was no bid issued by the VTA for

17  that project, "the first written memorialization of the agreement concerning the public works

18  elements of the project or the contract governing the award of public funds" is the May 7, 2008

19  Relocation Agreement.  Thus, they ask for partial summary judgment that May 7, 2008 is the

20  "benchmark date" and the applicable prevailing wage in effect at that time governs Ms. Silvia's

21  employment.  Cal. Lab. Code §§ 1720, 1771.

22  The Court will assume that Ms. Silvia bears the burden of proving her prevailing wage

23  claim; at oral argument she agreed that she was not aware of any authority for a contrary burden.

24  Defendants nonetheless bear the burden of proving that on the record before the Court, no

25  reasonable trier of fact could find the benchmark date is anything other than May 7, 2008.  *See*

26  *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000).

27  They have met their burden.

28  First, there is no evidence that the VTA/MCI relocation project was ever put out to bid.

1    This lack of evidence makes sense as the project was an agreement by MCI to relocate its own

2    cable fibers provided the VTA pay for the expense.  No bid by VTA was needed.  The declaration

3    of Ms. Silvia's expert, Douglas Nareau, does not create a material dispute of fact.  Mr. Nareau

4    states there is no evidence of the date an awarding body published the "first notice inviting bids"

5    or evidence of any other benchmark event for the Court to utilize.  (Dkt. No. 159-9 ¶ 41.)  The

6    Court is unpersuaded.  Because, as Mr. Nareau acknowledges, there is no evidence of a "first

7    notice inviting bids" the "first written memorialization" is utilized instead.  Here, that first

8    memorialization is the May 7, 2008 Relocation Agreement.

9          Second, the May 7, 2008 Relocation Agreement is the "first written memorialization"

10   because in that Agreement MCI agreed to the relocation of its cables to facilitate the BART

11   expansion project and this relocation project was funded by VTA making it a public work.

12   Indeed, the Agreement itself states that work under the Agreement is subject to the prevailing

13   wage.  Thus, the applicable prevailing wage for work pursuant to the Relocation Agreement is

14   determined as of May 7, 2008—the date of the Relocation Agreement. *See City of Long Beach v.*

15   *Department of Industrial Relations*, 34 Cal. 4th at 946 (using the law "in effect when the contract

16   at issue was executed" to determine whether the project was a public work subject to prevailing

17   wage laws).

18         Ms. Silvia nonetheless appears to argue that because MCI put the relocation work out to

19   bid, those bids are relevant to the benchmark date.  Not so. The Department Manual specifically

20   states that the proper date is the date the project was put out to bid "by the awarding body."  (Dkt.

21   No. 149-1 ¶ 3.2.4.)  MCI was not the body awarding the public works contract, VTA was.  It is

22   thus unsurprising that Ms. Silvia does not cite any authority to support her argument.

23         Ms. Silvia also contends that because the Relocation Agreement was amended on four

24   occasions, each new amendment gave rise to a new benchmark date.  Once again there is no

25   authority for her argument.  To the contrary, the Department has squarely held otherwise.  (Dkt.

26   No. 149-1 at 31-32.)  Ms. Silvia contends that this case is distinguishable because the Department

27   relied on the language of the amendment.  But Ms. Silvia has not offered any of the amendments

28   into evidence; indeed, at oral argument she explained that she has not seen them.  As the

amendments are not in the record, they cannot create a genuine dispute as to the benchmark date. Further, using the date of the original Relocation Agreement is consistent with the California Supreme Court's holding that the prevailing wage determination is made based upon the law "in effect when the contract at issue was executed," that is, the contract evidencing the public work, and not on some later date. *City of Long Beach,* 34 Cal. 4th at 949. As the Department has explained:

> [U]sing the date of the formative agreement as the benchmark for determining the applicable law is fair to all parties and provides predictable guidance to the regulated public . . . it is a date certain from which all parties with an interest in the public works consequences of the project can ascertain their rights and responsibilities.

(Dkt. No. 149-1 at 32.) Ms. Silvia's insistence that the date of some unidentified amendment is more appropriate does not create a genuine dispute of fact.

Finally, Ms. Silvia contends that in addition to the VTA/MCI Relocation Agreement, she also did work under a separate relocation agreement Verizon had with BART involving a BART extension in Alameda County. (Dkt. No. 159-5 ¶ 2; 159-8 at 11.) The flaw in this argument is that her prevailing wage claim is based solely on the VTA/MCI Relocation Agreement. Plaintiffs' Second Amended Complaint alleges:

> *During the entire time they worked for both the Verizon Defendants and the EA Defendants*, DEBBIE and JOHN worked pursuant to the "Agreement Between Santa Clara Valley Transportation Authority and MCI for Relocation and Cooperating Carrier Fiber Optic Cable Facilities," executed May 7, 2008 and the First Amendment thereto executed on November 19, 2010."

(Dkt. No. 103 ¶ 70 (emphasis added).) Further, in response to an Interrogatory asking Ms. Silvia to state all facts in support of her prevailing wage claim, Ms. Silvia made no mention of the Verizon/BART agreement or work performed pursuant to that agreement. (Dkt. No. 161-2 at 4-5). A prevailing wage claim based on work under a different agreement is not in this lawsuit.

Accordingly, the benchmark event for Ms. Silvia's prevailing wage determination is the May 7, 2008 Relocation Agreement.

**2. Prevailing Wage Classification**

Defendants next move for partial summary judgment that that the applicable prevailing

6

wage classification, if any, for Ms. Silvia is NC-63-3-9-2007-2 ("Determination 2007-2"):

"Building/Construction Inspector and Field Soils and Material Tester." While Ms. Silvia's

interrogatory response to EA's interrogatory number four asserts that the prevailing wage

applicable to her work is Determination 2007-2 for her hours in July 2008 to August 4, 2012, and

NC-64-3-8-2012-1 ("Determination 2012-1") from August 5, 2012 to July 25, 2015 (Dkt. No.

150-1 at 20:14-16), Defendants contend that Determination 2012-1 does not apply as a matter of

law. In particular, Defendants contend that Determination 2012-1 did not come into effect until

approximately four years after the benchmark date and therefore cannot govern Ms. Silvia's

claims. Defendants request the Court grant partial summary judgment on this issue, and conclude

as a matter of law that Determination 2007-2 was in effect on May 7, 2008 and governs Ms.

Silvia's claims. (*Id*. at 11:13-15, 18-20.) The Court agrees, to an extent.

Determination 2007-2 went into effect on August 22, 2007. (Dkt. No. 149-1 at 49.) The

expiration date of Determination 2007-2 is February 29, 2008. (*Id*.) Next to this date is a single

asterisk. (*Id*.) California Code of Regulations, Title 8, section 16204(b) provides in relevant part:

> Modification of Effective Date of Determination by Asterisks. Meaning of single
> and double asterisks. Prevailing wage determinations with a single asterisk (*) after
> the expiration date which are in effect on the date of advertisement for bids remain
> in effect for the life of the project. Prevailing wage determinations with double
> asterisks (**) after the expiration date indicate that the basic hourly wage rate,
> overtime and holiday pay rates, and employer payments to be paid for work
> performed after this date have been predetermined. If work is to extend past this
> date, the new rate must be paid and should be incorporated in contracts entered into
> now.

Although Determination 2007-2 expired on February 29, 2008, Determination 2007-2 also states

that it "remained effective until a new determination issued by the Director of Industrial

Relations." (Dkt. No. 149 at 49.) The next determination, NC-63-3-9-2008-1, was issued on

August 22, 2008. (Dkt. No. 149-1 at 56.)

Accordingly, given that the May 7, 2008 Relocation Agreement establishing the

benchmark date was executed after Determination 2007-2 and before the issuance of NC-63-3-9-

2008-1 or any subsequent determinations, Determination 2007-2 governs Ms. Silvia's prevailing

wage claims. Furthermore, because Determination 2007-2 contained a single asterisk, the

prevailing wage determinations under Determination 2007-2 "remain in effect for the life of the project," and thus Determination NC-63-3-9-2012-1 does not apply as it was issued in 2012, four years after the benchmark event. (Dkt. No. 149-1 at 42.)

Ms. Silvia does not dispute any of the above analysis; instead, she argues that there is a material dispute of fact as to the proper classification that covered her work; in particular, she now contends that she should be classified as a Utility Locator because that is the most appropriate classification based on the actual work she performed. She thus urges that there is a dispute of material dispute of fact that mandates denial of summary judgment. Ms. Silvia's argument, however, ignores her own assertions—and recent sworn testimony—in this lawsuit.

First, Ms. Silvia's belated attempt to argue that her work as a "utility locator is more analogous to other classifications" is prohibited by Rule 26. Rule 26(e)(1) of the Federal Rules of Civil Procedure requires all parties to supplement or correct responses to discovery requests "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P.26(e)(1)(A). The parties are expected to supplement and/or correct their disclosures promptly when required under that Rule, without the need for a request from opposing counsel or an order from the Court. *See Oracle USA, Inc., et al. v. SAP AG, et al.*, 264 F.R.D. 541, 544 (N.D. Cal. Sept. 17, 2009). In addition, Rule 37 mandates that a party's failure to comply with the obligations under Rule 26(e)(1) results in that party being precluded from "use [of] that information ... to supply evidence on a motion, at a hearing or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) is "self-executing" and "automatic." *Yeti by Molly, Ltd v. Deckers Outdoor Corp.* 259 F.3d 1101, 1106 (9th Cir. 2001). Once non-compliance is shown, the burden is on the party who failed to comply to demonstrate that it meets one of the two exceptions to mandatory sanctions. *Apple, Inc. v. Samsung Electronics Co.*, No. 11–CV–01846–LHK, 2012 WL 3155574, at *4 (N.D. Cal. Aug. 2, 2012).

Ms. Silvia specified in her response to EA's interrogatory four that Determination 2007-2

8

applied to her hours in July 2008 to August 4, 2012 and Determination 2012-1 applied to her

hours in August 5, 2012 to July 25, 2015.  Both determinations relate to work performed by

"Building/Construction Inspector and Field Soils and Material Tester."  And in response to

Interrogatory No. 2 she reiterated that she served as "Lead Building/Construction Inspector" for

purposes of the prevailing wage requirements of California Labor Code Section 1720.  (Dkt. No.

161-2.)  These responses are consistent with the allegations of each iteration of her complaint.

(Dkt. No. 1-1 ¶¶ 1, 12; Dkt. No. 37 ¶¶ 3, 6, 8, 10, 17, 19; Dkt. No. 103 ¶¶ 3, 6, 8, 10, 17, 19.)  Ms.

Silvia has not supplemented her interrogatory response to remove Determination 2007-2 and

Determination 2012-1or change Ms. Silvia's classification as required by Rule 26(e).  Nor has she

met her burden under Rule 37(c)(1) to show her failure to supplement her discovery responses is

substantially justified or harmless.  Indeed, as late as the date of her supplemental opposition to

Defendants' motion for summary judgment she again asserted—this time under oath—that  since

June 2008 she was a Verizon Defendants employee "serving as 'Lead Building/Construction

Inspectors' for purposes of the prevailing wage requirements of California Labor Code section

1720."  (Dkt. No. 159-2 ¶ 5.)  Ms. Silvia does not state in her declaration that she performed

"utility locating work."

The Court therefore grants Defendants' motion for summary judgment that Determination

2007-2 alone governs and not 2007-2 *and* 2012-1.  However, the Court is not comfortable on this

record holding that if Ms. Silvia cannot produce evidence sufficient to support a finding that she

performed work covered by Determination 2007-2 that her prevailing wage claim fails even if her

work is potentially covered by another classification. The Court prefers to answer that question in

the context of Defendants' forthcoming motion for summary judgment on Ms. Silvia's prevailing

wage claim in its entirety.

**3.    Per Diem Payments**

Determination 2007-2 includes language requiring certain per diem payments.

**05.04.00 Work at Distant Locations**. When an Employee is working at a location
so distant from the Individual Employer's regularly established office as to
preclude the Employee from returning to his or her regular place of residence at the

end of the working day, the Individual Employer shall furnish at its expense transportation to and from said location and subsistence during the time the Employee remains there…

**05.06.00 Subsistence**. The Individual Employer shall pay subsistence under Section 05.04.00 hereof, at the rate of sixty-five dollars ($65.00) per day effective March 1, 2005, on a seven (7) day-per-week basis…

(Dkt. No. 149-1 at 53-54.) Defendants argue Ms. Silvia was not entitled to receive per diem payments because she admits she lived in Milpitas the entire time she worked on the BART Expansion project. Defendants' motion is denied.

First, Defendants do not explain how the first part of the per diem requirement fits or does not fit Ms. Silvia's circumstances: "[w]hen an Employee is working at a location so distant from the Individual Employer's regularly established office" so "as to preclude returning to the employee's regular place of residence."

Second, Defendants' argument proves too much. If an employee is not entitled to the per diem every time she moves to be closer to the required work, then the per diem will never kick in because it assumes the employee cannot return home and has to move. At oral argument Defendants contended that after a certain amount of time the move becomes permanent and a per diem is no longer required. Perhaps. But Defendants do not explain how the Court can decide that amount of time as a matter of law rather than giving that decision to the trier of fact. The other facts cited by Defendants are facts to be weighed by the trier of fact.

Third, Defendants' motion asserts that Ms. Silvia had lived in Milpitas for six years before she began work for EA. But Defendants' motion is brought on behalf of all Defendants, not just EA, and nowhere does the motion argue that at a minimum summary judgment should be granted in EA's favor if not in the Verizon Defendants' favor. (Dkt. No. 148 at 14:22-23, 14:26-15:1.) If Defendants want the Court to take a claim away from the trier of fact they must be more precise in their arguments and the relief sought.

## III.    Rule 56(d) Continuance

Finally, the Court addresses Ms. Silvia's request for a further Rule 56(d) continuance. Rule 56(d) of the Federal Rules of Civil Procedure permits denial or continuance of a motion for summary judgment, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons,

United States District Court
Northern District of California

it cannot present facts essential to justify its opposition." A party requesting a Rule 56(d) continuance bears the burden of setting forth specific facts she hopes to elicit from further discovery and demonstrating that the facts sought not only exist but are also essential to oppose summary judgment. *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). Failing to meet this burden "is grounds for the denial" of a Rule 56(d) motion. *Pfingston v. Ronan Eng. Co.*, 284 F.3d 999, 1005 (9th Cir. 2002).

Ms. Silvia argues the Court should grant her request for a 56(d) continuance because (1) the documents in Ms. Brown's file cabinets pertaining to this matter have not been produced; and (2) Plaintiffs have yet to take the deposition of EA's PMK Mark Stevens. Plaintiffs' request is denied. Plaintiffs have not submitted any declaration or argument as to what specific facts Ms. Silvia hopes to elicit, that those specific facts exist in Ms. Brown's files or can be obtained from Mr. Stevens' deposition, and that these facts are essential to the instant motion. Simply stating that "numerous documents" have not been produced is insufficient to meet Plaintiffs' burden to state with specificity *what* documents are needed and *how* these documents are essential to the determination of the benchmark date, prevailing wage determination, or pier diem payments. Further, the Relocation Agreement was executed between VTA and MCI. Given that EA is not a party to the contract, Plaintiffs have failed to specify how the deposition of EA's PMK is even relevant to the instant motion, let alone what essential, specific facts can be obtained from it. The request for a Rule 56(d) continuance is denied.

## CONCLUSION

As explained above, Defendants' partial motion for summary judgment is GRANTED in part and DENIED in part. Ms. Silvia's objection to the Court's consideration of the May 8, 2007 Relocation Agreement is denied. Ms. Silvia's complaint references the Agreement as she does not contest the authenticity of the Agreement attached to Ms. Brown's declaration. The other objections are immaterial. Defendants' objections are overruled as the Court did not rely upon any of the objected-to evidence in reaching its decision.

//

//

United States District Court
Northern District of California

This Order disposes of Docket No. 148.

**IT IS SO ORDERED.**

Dated: January 5, 2018

_Jacqueline Scott Corley_

JACQUELINE SCOTT CORLEY
United States Magistrate Judge