UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBBIE SILVIA, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>EA TECHINICAL SERVICES, INC., et al.,<br><br>    Defendants. | Case No. 15-cv-04677-JSC<br><br>**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 173, 175 |

Plaintiff Debbie Silvia alleges she was not paid prevailing wages or overtime by her former employers.[1] Currently pending before the Court are the motions for summary judgment as of Defendants (1) Engineering Associates ("EA") and (2) MCI Communications Services, Inc. ("MCI") and Verizon Business Network Services, Inc. ("Verizon") (together, the "Verizon Defendants"). (Dkt. Nos. 173, 175.)[2] Having carefully reviewed the briefs and having had the benefit of oral argument on March 1, 2018, the Court GRANTS both motions.

## BACKGROUND

**A.    California Prevailing Wage Law**

"The California Prevailing Wage Law is a comprehensive statutory scheme designed to enforce minimum wage standards on construction projects funded in whole or in part with public funds." *Vector Res., Inc. v. Baker*, 237 Cal. App. 4th 46, 54 (2015). "The overall purpose of the prevailing wage law is to protect and benefit employees on public works projects." *City of Long Beach v. Dep't of Indus. Relations*, 34 Cal.4th 942, 949 (2004) (internal quotation marks and

---

[1] The parties stipulated to the dismissal of Plaintiff John W. Vieira's claims. (Dkt. No. 190.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

citation omitted). The law is to be liberally construed, although courts are not empowered to "interfere where the Legislature has demonstrated the ability to make its intent clear and chosen not to act." *Id*. at 950.

The prevailing wage statute applies to "workers," *see* Labor Code § 1723, employed on "public works" projects. *See* Labor Code § 1720 et seq. The statute defines "public works" in relevant part as:

> (1) Construction, alteration, demolition, installation, or repair work done under contract and paid for in whole or in part out of public funds, except work done directly by any public utility company pursuant to order of the Public Utilities Commission or other public authority. For purposes of this paragraph, "construction" includes work performed during the design and preconstruction phases of construction including, but not limited to, inspection and land surveying work.

Cal. Labor Code § 1720(a)(1). "Prevailing wage rates are set by the Department of Industrial Relations (DIR) and are predicated on applicable wage rates established by collective bargaining agreements within the locality and in the nearest labor market, among other factors." *Henson v. C. Overaa & Company*, 238 Cal.App.4th 184, 189 (2015) (referencing Cal. Lab. Code § 1773.) "Prevailing wage rate determinations generally list the scope of work and craft classifications to which the rates apply." *Id*. A worker may still have a prevailing wage cause of action even if the DIR never previously determined that the prevailing wage law applies to the work at issue or never previously established the wage rates that would apply to such work. *See Bennett v. SimplexGrinnell LP,* 2014 WL 910354, at *4-5 (N.D. Cal. March 5, 2014).

**B.     Factual Background**

On May 7, 2008, MCI and the Santa Clara Valley Transportation Authority ("VTA") agreed to the relocation of MCI's "carrier fiber" cables to facilitate a BART expansion project ("Relocation Agreement"). (Dkt. No. 171-2 at 10, 21.) The Relocation Agreement expressly states that MCI and its contractors and subcontractors will comply with the laws "pertaining to the payment of prevailing wages." (*Id*. at 19 ¶ 10.1.) In June 2008, after Ms. Silvia and her husband received a telephone call from Pam Brown, a senior engineer for Verizon, the Verizon Defendants hired Ms. Silvia to work on the VTA/BART Project. (Dkt. No. 181 ¶ 2.) Ms. Silvia asserts that

the Verizon Defendants, as well as other entities including EA, served as Ms. Silvia's joint employers. (*Id.* ¶ 4.)

Ms. Silvia's duties included serving as lead construction inspector, reading and interpreting blueprints, coordinating utility placement, reviewing the VTA's proposed work, and supervising safety in all areas of carrier fiber relocation. (*Id.* ¶ 21.) Ms. Silvia's daily activities consisted of using tape measurers and wheels to survey trenches, pipes, and the proximity of other underground facilities; using "Metro Tech" locators and handheld probes to dig into the dirt and locate pipes; and using marking paint to mark the line for the crews. (*Id.* ¶ 31.) Ms. Silvia also supervised other construction inspectors, approved their timesheets, addressed incorrect installations, resolved right of way issues, and handled incorrect construction materials. (*Id.* ¶ 21.)

On January 27, 2014, Ms. Brown called Ms. Silvia to inform her that she was going to be hired by EA to perform services on the VTA/BART project. (*Id.* ¶ 19.) Ms. Brown also informed Ms. Silvia that EA would handle Ms. Silvia's pay. (*Id.* ¶ 20.)

A few months later, Verizon wrote the California Labor Commissioner to confirm its understanding that the inspectors it would be utilizing to review and monitor the VTA/BART project were not subject to the prevailing wage law. (Dkt. No. 171-2 at 41.) In doing so, Verizon provided its description of the inspectors' job duties. (*Id.*) The DIR advised that based on Verizon's description of the inspectors' job duties as "watching over the construction crew moving the fiber optic facilities but they will not be doing any construction work," the work does not fall within the meaning of "inspection" in the definition of "public works" in Labor Code section 1720(a)(1). (Dkt. No. 171-2 at 43.) The DIR added, however, that if the inspectors are actually performing work "that falls under the scope of work for the craft of **Building/Construction Inspector and Field Soils and Material Tester**, they would be subject to the prevailing wage rate." (*Id.*)

**C.    Procedural History**

Ms. Silvia filed her original complaint in state court which the then-defendants removed on the basis of diversity jurisdiction. (Dkt. Nos. 1, 1-1.) While Plaintiffs are California citizens and one named defendant was a California citizen, the removing defendants insisted that the California

3

defendant was a sham and improperly joined and neither Ms. Silvia (nor her co-plaintiff at the time) objected. (Dkt. No. 1.) The parties in the operative Second Amended Complaint are completely diverse for jurisdiction purposes. (Dkt. No. 103.)

After rulings on motions to dismiss and the parties' stipulations, four claims remain: Ms. Silvia's claims for breach of California Labor Code sections 1194, 1194.2, 1771, and 1774 (claim one); breach of contract – third party beneficiary (claim two); failure to pay prevailing wages as unfair business practices under California Business & Professions Code Section 17200 *et seq.* (claim six); and unjust enrichment (claim seven). All arise from Ms. Silvia's claim that Defendants did not pay her the applicable prevailing wage.

### D. Ms. Silvia's Description of her Prevailing Wage Claim

Consistent with the DIR's 2014 advisory opinion, every iteration of Ms. Silvia's complaint has repeatedly asserted that she is entitled to the prevailing wage for working as a "Lead Construction Inspector" or "Lead Building/Construction Inspector." (Dkt. No. 1-1 (state court complaint) ¶¶ 1, 12; Dkt. No. 37 (First Amended Complaint) ¶¶ 3, 6, 8, 10, 17, 19; Dkt. No. 103 (Second Amended Complaint) ¶¶ 3, 6, 8, 10, 17, 19.) Similarly, in her initial disclosures Ms. Silvia claimed that her damages are based upon Defendants' "failure to pay Lead Building/Construction Inspector and Field Soils and Material Tester prevailing wages." (Dkt. No. 156-1 at 9:9-11.)

EA's Interrogatory No. 4 specifically asked Ms. Silvia to "[i]dentify the specific prevailing wage classification by the Director of Industrial Relations YOU allege was applicable to YOUR work. YOUR identification of the classification shall include the specific determination number and issue date and the journeyperson [sic] classification therein YOU claim was applicable." (Dkt. No. 150-1 at 20:8-12.) Ms. Silvia responded: "Plaintiff believes that NC-63-3-9-2007-02 should be applied to all of the hours from July 2008 to August 4, 2012. Plaintiff believes that NC-63-3-9-2012-1 should be applied to all of the hours from August 5, 2012 to July 25, 2015." (*Id*. at 20:13-16.) NC-63-9-2007-02 identifies its described craft as "Building/Construction Inspector and Field Soils and Material Tester." (Dkt. No. 149-1 at 42.) NC-63-3-9-2012-1 refers to the same craft. (Dkt. No. 149-1 at 43.) In response to Interrogatory No. 5, Ms. Silvia repeated that

4

1 she "served as 'Lead Building/Construction Inspector' for purposes of the prevailing wage
2 requirements of California Labor Code Section 1720." (Dkt. No. 150-1 at 20:20-22.)

In Ms. Silvia's declaration filed in opposition to Defendants' October 2017 motion for summary judgment she similarly attested that she served as "Lead Building/Construction Inspectors for purposes of the prevailing wage requirements of California Labor Code Section 1720." (Dkt. No. 152-4 at ¶ 5.) The assertion was repeated in her declaration submitted in support of her supplemental opposition to summary judgment. (Dkt. No. 159-2 at 3 ¶ 5.)

### E. Defendants' Summary Judgment Motions

Because Ms. Silvia asserted that DIR determination NC-63-3-9-2007-02 for Lead Building/Construction Inspector and Field Soils and Material Tester should control the prevailing wage for her work through August 2012, and that DIR determination NC-63-3-9-2012-1 for the same classification should control the prevailing wage for her post-August 2012 work for Defendants (Dkt. No. 150-1 at 20), Defendants moved for partial summary judgment that NC-63-3-9-2012-1 could not apply to Ms. Silvia's work because it was issued four years after the "benchmark date." This Court agreed. (Dkt. No. 170.)

Now pending before the Court is the further motion for summary judgment of the Verizon Defendants and the further motion for summary judgment of EA. Among other things, the Verizon Defendants argue that the evidence is insufficient to support a finding that they were Ms. Silvia's joint employer; however, EA concedes for purposes of its motion that it employed Ms. Silvia. The Verizon Defendants and EA also argue that, in any event, Ms. Silvia's prevailing wage claim fails because the evidence is insufficient to support a finding that she performed work within the scope of the "Lead Building/Construction Inspector" classification, and thus that she performed "inspection" work within the meaning of Section 1720(a)(1). Because the Court agrees, Defendants' motion for summary judgment is granted.

## DISCUSSION

Defendants argue Ms. Silvia is not entitled to prevailing wages because no reasonable trier of fact could find that the work Ms. Silvia performed to protect the fiber cable lines from damage is analogous to the work of a "Building/Construction Inspector and Field Soils and Material

Tester" and thus does not qualify as "inspection" within the meaning of California Labor Code section 1720(a)(1). The work of a "Building/Construction Inspector and Field Soils and Material Tester" is defined as:

> [T]he monitoring of the materials and workmanship which are critical to the engineer or architect of record and/or the building official. This requires inspection by persons with highly developed inspection skills to verify that the material and workmanship comply with the approved plan specifications and contract documents. The special inspector/technician is used for complex on site installations requiring certain inspection skills in one or more construction crafts.

(Dkt. No. 174-1 at 14.) Defendants insist that nothing in Ms. Silvia's deposition testimony or declarations remotely suggests that she performed any such work and therefore a reasonable trier of fact could not find that she was entitled to a prevailing wage. (*See, e.g.,* Dkt. No. 173 at 13-15.)

In opposition, Ms. Silvia abandons her repeated assertion that she is entitled to the prevailing wage for working as a Lead Building/Construction Inspector. She does not even attempt to identify any evidence that would support a finding that she performed work falling within or analogous to the "Lead Construction Inspector" or "Lead Building/Construction Inspector" classification. Accordingly, as the record does not support a finding that Ms. Silvia performed work analogous to a Building/Construction Inspector, Defendants' motion is granted on that issue. *See Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) ("[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.") (internal citations and quotation marks omitted).

Instead of supporting her pleaded prevailing wage theory, Ms. Silvia raises a prevailing wage contention not found in her complaint, initial disclosures, or interrogatory responses; namely, that she performed "Utility Locating" work that is within the scope of the "Field Surveyor or Laborer Group 3A" classification, citing to title 8, section 16001(c) of the California Code of Regulations. That regulation states that "Field survey work traditionally covered by collective bargaining agreements is subject to prevailing wage rates when it is integral to the specific public works project in the design, preconstruction, or construction phase." Cal. Code Regs. tit. 8, §

16001(c). According to Ms. Silvia's expert, "[t]he only appropriate classifications [for Ms. Silvia's work] are the Operating Engineer Field Surveyor classification and the Laborer Group 3A classification." (Dkt. No. 180 ¶ 26.)

The problem with this theory is that it is contrary to the allegations of every version of Ms. Silvia's complaint, her initial disclosures and her responses to EA's Interrogatories 4 and 5. It is, in other words, an entirely different theory from the theory under which she has been prosecuting her prevailing wage claims. The first time she raised this new prevailing wage contention was in late October 2017 in response to Defendants' motion for summary judgment regarding the benchmark date. (Dkt. No. 152 at 14-15.). The Court concluded Ms. Silvia's new theory ignored "her own assertions—and recent sworn testimony—in this lawsuit" and that "Ms. Silvia's belated attempt to argue that her work as a 'utility locator is more analogous to other classifications' is prohibited by Rule 26." (Dkt. No. 170 at 8:8-11.) In particular the Court recounted:

> Ms. Silvia specified in her response to EA's interrogatory four that Determination 2007-2 applied to her hours in July 2008 to August 4, 2012 and Determination 2012-1 applied to her hours in August 5, 2012 to July 25, 2015. Both determinations relate to work performed by "Building/Construction Inspector and Field Soils and Material Tester." And in response to Interrogatory No. 2 she reiterated that she served as "Lead Building/Construction Inspector" for purposes of the prevailing wage requirements of California Labor Code Section 1720. (Dkt. No. 161-2.) These responses are consistent with the allegations of each iteration of her complaint. (Dkt. No. 1-1 ¶¶ 1, 12; Dkt. No. 37 ¶¶ 3, 6, 8, 10, 17, 19; Dkt. No. 103 ¶¶ 3, 6, 8, 10, 17, 19.) Ms. Silvia has not supplemented her interrogatory response to remove Determination 2007-2 and Determination 2012-1 or change Ms. Silvia's classification as required by Rule 26(e). Nor has she met her burden under Rule 37(c)(1) to show her failure to supplement her discovery responses is substantially justified or harmless. Indeed, as late as the date of her supplemental opposition to Defendants' motion for summary judgment she again asserted—this time under oath—that since June 2008 she was a Verizon Defendants employee "serving as 'Lead Building/Construction Inspectors' for purposes of the prevailing wage requirements of California Labor Code section 1720." (Dkt. No. 159-2 ¶ 5.) Ms. Silvia does not state in her declaration that she performed "utility locating work."

*(Id.* at 8:28-9:16.) The Court did advise, however, that on the current record it was not comfortable holding that her prevailing wage claim fails even if her work is potentially covered by another classification, especially since that was not an issue on which Defendants had moved for summary judgment (as they could not, since Ms. Silvia raised the theory for the first time in her

7

1  summary judgment opposition). The Court informed the parties that it preferred to answer that

2  question in the context of Defendants' forthcoming motion for summary judgment on Ms. Silvia's

3  prevailing wage claim in its entirety. (*Id*. at 9:17-23.)

4  Thereafter, EA and the Verizon Defendants filed the instant motions for summary

5  judgment. (Dkt. Nos. 173, 175.) On the current record, the Court holds that Ms. Silvia is barred

6  by Federal Rules of Civil Procedure 26 and 37 from changing her prevailing wage theory to

7  oppose summary judgment.

8  Rule 26(e)(1) of the Federal Rules of Civil Procedure requires all parties to supplement or

9  correct responses to discovery requests "in a timely manner if the party learns that in some

10  material respect the disclosure or response is incomplete or incorrect, and if the additional or

11  corrective information has not otherwise been made known to the other parties during the

12  discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). The parties are expected to

13  supplement and/or correct their disclosures promptly when required under that Rule, without the

14  need for a request from opposing counsel or an order from the court. *See Oracle USA, Inc., v. SAP

15  AG*, 264 F.R.D. 541, 544 (N.D. Cal. Sept. 17, 2009). In addition, Rule 37 mandates that a party's

16  failure to comply with its Rule 26(e)(1) obligations results in that party being precluded from "use

17  [of] that information ... to supply evidence on a motion, at a hearing or at trial, unless the failure

18  was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) is "self-

19  executing" and "automatic." *Yeti by Molly, Ltd v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106

20  (9th Cir. 2001). To this day Ms. Silvia has not supplemented her interrogatory responses or initial

21  disclosures, or amended her complaint, to retract her affirmative representation that she is entitled

22  to a prevailing wage for performing the work of a Building/Construction Inspector and assert

23  instead that she is entitled to the prevailing wage for performing the work of a Utility Locator

24  falling within the scope of a Field Surveyor or Laborer Group 3A classification. Thus, pursuant to

25  Rule 37(c)(1), she is barred from asserting this new theory now.

26  Even if Ms. Silvia's disclosure of her new theory in her summary judgment opposition

27  could be construed as satisfying her Rule 26(e)(1) obligation to supplement (and Ms. Silvia does

28  not cite any authority that it does), it was not done in a "timely manner." As explained above,

8

from the inception of this case more than two years ago, Ms. Silvia has consistently and affirmatively represented that her prevailing wage claims are based upon her assertion that she performed work within the scope of the Building/Construction Inspector classification. Defendants thus defended this action and, importantly, focused their discovery, on defeating this assertion. A party's pleadings and discovery responses would be meaningless if the party could simply abandon its responses and allegations and develop an entirely new theory on the eve of the close of discovery and in response to summary judgment. Such a process would violate the command of Federal Rule of Civil Procedure 1 that the courts and the parties construe, administer, and employ the Rules to "secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1; *see also Oracle USA, Inc.,* 264 F.R.D. at 544 ("The orderly case management of complex litigation requires defining the basic contours of the litigation from the outset, including the damages sought, and directing discovery accordingly in order to avoid runaway costs.").

Ms. Silvia's lament that the applicable prevailing wage rate is based on the work actually performed misses the point. It may well be that based on the work Ms. Silvia actually performed, she was employed on a "public works" project as defined in the prevailing wage statute because she performed Utility Locator work within the scope of a Field Surveyor or Laborer Group 3A classification. She prosecuted this action, however, under a different theory; namely, that she performed the work of a Building/Construction Inspector and thus performed "inspection" work within the meaning of Labor Code section 1720(a). And she has chosen in opposition to summary judgment to not offer any evidence or even argument to support her long-asserted liability theory. Thus, summary judgment in favor of Defendants is warranted.

Finally, Ms. Silvia has not met her burden of showing that her failure to earlier disclose her new prevailing wage contention was substantially justified or harmless. *See Yeti by Molly, Ltd.*, 259 F.3d at 1106-1107 (holding the burden is on the party who made the late disclosure to show substantial justification or harmlessness).

First, Ms. Silvia argues the Court should permit her new Utility Locator theory because while she initially believed the closest analogy to her work was the Building/Construction Inspector classification, "subsequent information obtained through depositions, including the

9

deposition of Pam Brown, and the opinion of Plaintiffs' Prevailing Wage Expert, Douglas Nareau, indicate that [Ms. Silvia]'s work as a utility locator is more analogous to other classifications." (Dkt. No. 178 at 18:17-19.) This "showing" is insufficient. There is no declaration to support the brief's attorney argument attempting to explain the belated change in liability theory and, in any event, Ms. Silvia does not identify the "subsequent information obtained through depositions." Ms. Silvia knows what work she performed; indeed, she is relying on her own description of her work to support her new prevailing wage contention. Even apart from her failure to identify what "new information" she discovered, including from Ms. Brown, she could have deposed Ms. Brown earlier. Ms. Silvia's oral argument assertion that discovery was delayed due to Defendants' obstruction in identifying the appropriate Verizon defendants is unpersuasive as Ms. Silvia named Ms. Brown in her initial complaint. As for Mr. Nareau, no rule prohibited Ms. Silvia from consulting an expert as to the appropriate classification before she repeatedly asserted in this litigation that she is contending that her work was most analogous to the Building/Construction Inspector classification. Instead, it appears she filed this lawsuit and prosecuted it for two years based on the DIR's aside that if an employee performed work within the scope of a Building/Construction Inspector such work would be subject to a prevailing wage. Only after, or at least around the time, that Defendants moved for summary judgment on the prevailing wage claim did Ms. Silvia consult an expert who apparently concluded that Ms. Silvia did not perform Building/Construction Inspection work. These circumstances are not a "substantial justification."

Nor has Ms. Silvia shown harmlessness. By the time Ms. Silvia disclosed her abandonment of her Building/Construction Inspector theory and adoption of the new Utility Locator contention, Defendants had already moved for partial summary judgment based on her Building/Construction Inspector theory. They had completed their discovery. Fact discovery closed on November 10, 2017. (Dkt. No. 129 at 2.) Expert discovery closed on January 25, 2018. (Dkt. No. 165.) Trial is currently set for May 7, 2018. (*Id.*) To allow Ms. Silvia to change her theory at this late date will require the Court to reopen those deadlines, continue the trial date, and allow Defendants to bring another summary judgment motion after conducting additional

discovery focused on the Utility Locator contention. Ms. Silvia's late change of theory is thus the opposite of harmless.

\*\*\*

A reasonable trier of fact could not find that Ms. Silvia performed work analogous to the Building/Construction Inspector classification, and thus that she performed "inspection" within the meaning of Labor Code section 1720(a)(1). As Rule 37(b)(1) bars Ms. Silvia from asserting at this late date that her work entitled her to a prevailing wage under a different classification, Defendants' motion for summary judgment on Ms. Silvia's first claim for the prevailing wage is GRANTED.

Ms. Silvia's remaining causes of action based upon "breach of contract – third party beneficiary," "failure to pay prevailing wages as unfair business practices under California Business and Professions Code Section 17200 *et seq.*," and "unjust enrichment" are dependent upon Ms. Silvia's prevailing wage claim and likewise fail. First, Ms. Silvia failed to show Defendants "breached the public works construction written contracts by failing to pay prevailing wages" and as such her third party beneficiary claim fails. Second, Ms. Silvia's UCL claim is premised on the same acts alleged in the prevailing wage cause of action and given the prevailing wage cause of action fails, Ms. Silvia's UCL claim likewise must be summarily adjudicated as she has not adequately shown any predicate unlawful acts. *See Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1182 (9th Cir. 2003). Third, Ms. Silvia cannot show Defendants were unjustly enriched because she has failed to show Defendants were required to pay her prevailing wage.

In light of this ruling, the Court declines to address Defendants' additional grounds for summary judgment, including the Verizon Defendants' argument that no reasonable trier of fact could find that it was Ms. Silvia's joint employer.

**EVIDENTIARY ISSUES**

EA requests the Court take judicial notice of Exhibits A through H, including: (1) various provisions for Determination 2007-2 and Determination 2009-1, (2) a letter from the Department of Industrial Relations ("DIR") to Steve Schellert, a Verizon representative, (3) Ms. Silvia's worker complaint to the Labor Commissioner, (4) a DIR notice regarding Ms. Silvia's closed

11

1  complaint, and (5) an IRS ruling regarding the deduction of travel expenses when a taxpayer is
2  temporarily away from home. (Dkt. No. 174.) EA also submitted a supplemental request asking
3  the Court to take judicial notice of three DIR determinations issued by the Office of the Director.
4  (Dkt. No. 186.) The Verizon Defendants request the Court to take judicial notice of items 1 and 2
5  above as well as the fictitious business name filing record for J Silvia Construction and a
6  California Division of Labor Standards Enforcement ("DLSE") opinion letter. (Dkt. No. 172.)

Given these documents are not subject to reasonable dispute, their accuracy does not appear to be in question, and most of the documents are official DIR records, the Court grants the requests for judicial notice to the extent the Court relied on the documents in this Order. *See* Fed. R. Evid. 201(b); *U.S. v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008) ("Judicial notice is appropriate for records and 'reports of administrative bodies.'") Otherwise, the requests are denied as moot.

Ms. Silvia's objection to Verizon's letter to the DIR asking whether certain inspection duties require a prevailing wage and the DIR's response (Dkt. Nos. 173-9 at 34-36) is overruled. Defendants sufficiently authenticated the documents through the declarations of Mr. Bertossa and Ms. Brown. Further, the Court did not consider the DIR's letter for the truth of matters asserted; rather, the letters merely provide context to Ms. Silvia's prevailing wage contention in this litigation. Ms. Silvia's objections to certain paragraphs of Ms. Brown's and Ms. Brewer's declarations are denied as moot as the resolution of these motions turns on Ms. Silvia's failure to offer any evidence to support her asserted prevailing wage theory rather than on Ms. Brown's declaration.

**MOTIONS TO SEAL**

The Verizon Defendants move to seal Exhibits C-N to the Thomas declaration in support of their motion and Exhibit B to the Thomas declaration in support of their reply brief. (Dkt. Nos. 177, 188.)

There is a presumption of public access to judicial records and documents. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). A party must demonstrate "compelling reasons" to seal judicial records attached to a dispositive motion. *Kamakana v. City & Cnty. of*

12

*Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). Examples of compelling reasons include "the use of court records for improper purposes," such as "to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* "[S]ources of business information that might harm a litigant's competitive strategy may also give rise to a compelling reason to seal," *Nixon*, 435 U.S. at 597, as may pricing, profit, and customer usage information kept confidential by a company that could be used to the company's competitive disadvantage, *see Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1225 (Fed. Cir. 2013). The court must "balance the competing interests of the public and the party who seeks to keep certain judicial records secret. After considering these interests, if the court decides to seal certain judicial records, it must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Kamakana*, 447 F.3d at 1179; *see also Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1162 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2374 (2012).

In addition, parties moving to seal documents must comply with the procedures set forth in Civil Local Rule 79-5. The rule permits sealing only where the parties have "establishe[d] that the document or portions thereof is privileged or protectable as a trade secret or otherwise entitled to protection under the law." Civ. L.R. 79-5(b). It requires the parties to "narrowly tailor" their requests only to the sealable material. *Id.* at 79-5(d). Thus, although sometimes it may be appropriate to seal a document in its entirety, whenever possible a party must redact. *See Kamakana*, 447 F.3d at 1183 (noting a preference for redactions so long as they "have the virtue of being limited and clear"); *Murphy v. Kavo Am. Corp.*, 11-cv-00410-YGR, 2012 WL 1497489, at *2-3 (N.D. Cal. Apr. 27, 2012) (denying motion to seal exhibits but directing parties to redact confidential information).

Exhibits C-N contain emails between Ms. Silvia, Ms. Brown, representatives at Civtel, and other professionals working on the project. The exhibits also contain Ms. Silvia's daily reports. Exhibit B consists of "Silvia Construction" invoices.

The Verizon Defendants do not explain how these documents contain business information that might harm its competitive strategy giving rise to a compelling reason to seal. The Verizon Defendants argue the documents should be filed under seal because they were produced by

13

Plaintiff and were designated as confidential under the parties' existing protective order. However, a party's bare assertion that the documents are confidential does not meet the "compelling reasons" standard outlined above. Nor does it meet the requirements of the Local Rules. *See* N.D. Cal. L.R. 79–5(d)(1)(A) ("Reference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable."). Further, the "compelling reasons" standard is a strict one, and "[s]imply mentioning a general category of privilege, without any further elaboration or any specific linkage with the documents, does not satisfy the burden." *Kamakana*, 447 F.3d at 1184. Nor have the Verizon Defendants made any effort to narrowly tailor their requests by redacting the allegedly confidential material; instead the Verizon Defendants improperly attempt to seal the documents in their entirety. *See* Civ. L.R. 79-5(b). Accordingly, the motions to seal are DENIED.

## CONCLUSION

For the reasons described above, Defendants' motions for summary judgment are GRANTED. The Verizon Defendants' motions to seal are DENIED.

This Order disposes of Docket Nos. 173, 175, 177, and 188. Judgment shall be issued in favor of Defendants and against Plaintiff.

**IT IS SO ORDERED.**

Dated: March 16, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge