UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBBIE SILVIA, et al.,<br><br>    Plaintiff,<br><br>v.<br><br>EA TECHNICAL SERVICES, INC., et al.,<br><br>    Defendants. | Case No. 15-cv-04677-JSC<br><br>**ORDER GRANTING MOTION FOR PERMANENT INJUNCTION**<br><br>Re: Dkt. Nos. 200, 202, 204 |

    Plaintiff Debbie Silvia alleges her former employers violated California's wage and hour laws. (Dkt. 103.) Now pending before the Court is the motion of Engineering Associates ("EA") for a permanent injunction to enjoin Plaintiff from pursuing causes of action in California state court that were adjudicated in this action. (Dkt. No. 200.) Having reviewed the parties' briefing, and having had the benefit of oral argument on June 14, 2018, the Court GRANTS EA's motion. Claim preclusion bars Ms. Silvia's claims from being pursued in any court, including the state court, and the application of claim preclusion is an exception to the Anti-Injunction Act. The Court in its discretion enjoins the state court proceedings given Plaintiff's litigation conduct in this action and her current simultaneous pursuit of the same causes of action in two jurisdictions.

**BACKGROUND**

    On August 21, 2015, Plaintiff initiated this lawsuit in state court. Thereafter, Defendant EA removed the case to federal court on grounds of diversity jurisdiction. (Dkt. Nos. 1, 1-1.) After rulings on motions to dismiss and the parties' stipulations, four claims remained in the operative Second Amended Complaint: breach of California Labor Code sections 1194, 1194.2, 1771, and 1774 (claim one); breach of contract – third party beneficiary (claim two); failure to pay

prevailing wages as unfair business practices under California Business & Professions Code Section 17200 et seq. (claim six); and unjust enrichment (claim seven).

Defendants moved for summary judgment on all claims arguing that Ms. Silvia's prevailing wage theory failed because the evidence was insufficient to support a finding that she performed work within the scope of the "Lead Building/Construction Inspector" classification, and thus, that she performed "inspection" work within the meaning of California Labor Code Section 1720(a)(1). (Dkt. Nos. 173, 175.) In opposition to summary judgment Plaintiff raised a prevailing wage theory that was not found in her complaint, initial disclosures, or interrogatory responses: that she performed "Utility Locating" work within the scope of the "Field Surveyor or Laborer Group 3A" classification under title 8, section 16001(c) of the California Code of Regulations. (Dkt. No. 194 at 6:21-28.) The Court held that Plaintiff was barred by Rules 26 and 37 of the Federal Rules of Civil Procedure from changing her prevailing wage theory to oppose summary judgment. (Dkt. No. 194 at 8-11.) As the evidence was insufficient to support the prevailing wage theory upon which Plaintiff had prosecuted the action, judgment was entered in Defendant's favor. (Dkt. Nos. 194, 195.) Plaintiff appealed to the Ninth Circuit Court of Appeals. (Dkt. No. 197.)

On the same day she filed her appeal, Plaintiff filed a new complaint in Santa Clara Superior Court. (Dkt. No. 201.)[1] The state complaint includes the same plaintiff against the same defendants as are on appeal in this action. Plaintiff asserts that she performed the work of a Utility Locator, advancing the fatally tardy theory of her federal case. Plaintiff makes four claims in her state action: failure to provide/and or authorize meal and rest periods/unpaid wages in violation of California Labor Code sections 226.7 and IWC wage orders (first cause of action); a claim pursuant to Labor Code 203 for willfully failing to pay final wages (second cause of action); a claim pursuant to Labor Code sections 226 and 1174 for failure to provide itemized wage statements (third cause of action); and an unfair business practices claim under California

---

[1] EA requests the Court take judicial notice Plaintiff's state action. EA's request is granted. *See* Fed. R. Evid. 201 (the court may judicially notice a fact that is not subject to reasonable dispute); *see also Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (judicial notice is appropriate for "materials incorporated into the complaint or matters of public record").

2

Business & Professions Code Section 17200 et seq. arising from the above Labor Code violations (claim four).

Defendant EA contends that the new state action repeats Ms. Silvia's federal action claims for:

> (1) failure to pay final wages under Labor Code sections 200-204 that were dismissed with prejudice by Silvia and her current counsel (Dkt. No. 145), (2) her inaccurate wage statement claims under Labor Code sections 226 and 1174 disposed of in this action (Dkt. No. 103 at ¶ 11; Dkt. No. 194), (3) Unfair Business Practice Act claims under Business and Professions Code section 17200 that she lost on summary judgment (Dkt. No. 194), and (4) meal and rest period violations under California Labor Code sections 226.7 and 512 that were included in her damages claim in this action (Dkt. No. 159-6 at p. 10 (seeking damages for "Failure to provide rest breaks and meal breaks")) and described in her initial disclosures (Dkt. No. 156-1 at p. 9).

(Dkt. No. 200 at 6.) It therefore moves this Court to permanently enjoin Ms. Silvia's new state action against it pursuant to the All Writs Act.

**LEGAL STANDARD**

The All Writs Act "allows federal courts to issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *Sandpiper Village Condominium Ass'n., Inc. v. Louisiana-Pacific Corp.*, 428 F.3d 831, 842 (9th Cir. 2005) (citing 28 U.S.C. § 1651). The All Writs Act is limited, however, by the Anti-Injunction Act, "which prevents a federal court from enjoining the 'proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'" *Id*. (citing 28 U.S.C. Section 2283). The Act "is a necessary concomitant of the Framers' decision to authorize, and Congress' decision to implement, a dual system of federal and state courts." *Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011) (citing *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988)). "[T]he Act's core message is one of respect for state courts." *Id*. The Act "broadly commands" that state courts "shall remain free from interference by federal courts." *Id*. (internal citation and quotation marks omitted).

The Anti-Injunction Act has only "three specifically designed exceptions." *Id*. Those exceptions "are narrow and are 'not [to] be enlarged by loose statutory construction.'" *Id*.

(internal quotation marks and citation omitted). "[D]oubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed." *Id*. (internal quotation marks and citation omitted). Indeed, "[t]he fact that an injunction *may* issue under the Anti-Injunction Act does not mean that it *must* issue." *Chick Kam Choo*, 486 U.S. 140, 146 (1988) (emphasis in original).

## DISCUSSION

EA argues that the Anti-Injunction Act does not prohibit this Court from enjoining the state court from proceeding upon Ms. Silvia's claims based upon the Act's "relitigation exception." *See California v. IntelliGender, LLC*, 771 F.3d 1169, 1176 (9th Cir. 2014). "That exception is designed to implement 'well-recognized concepts' of claim and issue preclusion." *Id.* It "authorizes an injunction to prevent state litigation of a claim or issue that previously was presented to and decided by the federal court." *Smith*, 564 U.S. at 306. "Deciding whether and how prior litigation has preclusive effect is usually the bailiwick of the second court." *Smith,* 564 U.S. at 307. Therefore, issuing an injunction under this exception "is resorting to heavy artillery." *Id.* "For that reason, every benefit of the doubt goes toward the state court" and "an injunction can issue only if preclusion is clear beyond peradventure." *Id.*

The relitigation exception empowers a district court to "issue injunctions to enforce judgments and to reinforce the effects of the doctrines of res judicata and collateral estoppel." *Id*. "Res judicata applies when the earlier suit: (1) reached a final judgment on the merits; (2) involved the same cause of action or claim; and (3) involved identical parties or privies." *IntelliGender,* 771 F.3d at 1176. Res judicata, otherwise known as claim preclusion, bars Ms. Silvia's claims.

First, as to the final judgment requirement, California and federal law differ as to when a judgment rendered by a trial court becomes a "final judgment" for res judicata purposes*. Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 928 (9th Cir. 2006). "Under California law, . . . a judgment is not final for purposes of res judicata during the pendency of and until the resolution of an appeal." *Id.* (internal quotation marks and citation omitted). "In contrast, [i]n federal courts, a district court judgment is final for purposes of res judicata." *Id.* (internal quotation marks and citation omitted). "This is so even during the pendency of an appeal." *Id.*

4

Because this is a diversity case, California collateral estoppel rules apply. *See Jacobs v. CBS Broadcasting, Inc.*, 291 F.3d 1173, 1177 (9th Cir. 2002) (citing cases). "Under California law, the preclusive effect of a prior federal judgment is a matter governed by federal law." *Id.* Therefore, in applying California law, the federal final judgment rule applies. *See Sosa*, 437 F.3d 929 ("[a] federal district court judgment is as final in California courts as it would be in federal courts") (internal quotation marks and citation omitted). Here, the parties stipulated to dismissal of certain claims with prejudice (Dkt. No. 145), and the Court ruled in Defendants' favor on their motion summary judgment and entered judgment (Dkt. No. 195); therefore, applying the federal rule, this Court's judgment is final for purposes of res judicata. In other words, if this was a diversity case where the Court was reviewing a state trial court decision for claim and issue preclusion that was on appeal to a California appellate court, the judgment would *not* be final. But because the issue here is the finality of a *federal* trial court decision, the judgment is final for claim and issue preclusion purposes.

Second, it is undisputed that the parties are identical in both cases, although Ms. Silvia named additional defendants in the state action. Ms. Silvia was a plaintiff in this case and is a plaintiff in the state case and EA was a defendant in this case and is a defendant in the new state case.

Third, this action and the new state action involve the same causes of action or claims.

> Under California's doctrine of claim preclusion, "all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date." As opposed to the federal "transactional" theory of claim preclusion, "California courts employ the 'primary rights' theory to determine what constitutes the same cause of action for claim preclusion purposes."
>
> A "'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty." [I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery." "If the same primary right is involved in two actions, judgment in the first bars consideration not only of all matters actually raised in the first suit but also all matters which could have been raised." "[U]nder the primary rights theory, the determinative factor is the harm suffered. When two actions

5

> involving the same parties seek compensation for the same harm, they generally involve the same primary right."

*Gonzales v. California Dep't of Corrections*, 739 F.3d 1226, 1232-33 (9th Cir. 2014) (internal citations omitted); *see also Jacobs,* 291 F.3d at 1177 (in a diversity case, state law collateral estoppel rules apply). The Court's focus is therefore "on the facts pleaded and injuries alleged by [Ms. Silvia] in [her] state and federal complaints, without regard to [her] asserted theories of recovery. *Adam Bros. Farming v. Cty. of Santa Barbara*, 604 F.3d 1142, 1149 (9th Cir. 2010).

The same primary rights are involved in both actions: Ms. Silvia's contention that she is entitled to additional compensation from EA and penalties from EA for its failure to provide her that compensation in the first place. Her first cause of action in the state action—willfully failing to pay final wages—was made and dismissed with prejudice by Ms. Silvia in this federal action. (Dkt. No. 145.) That claim is thus barred by at least claim preclusion. She complained about inaccurate wage statements from EA in the federal action and in the state action again complains about the same inaccurate wage statements. And her unfair competition claim is based upon those same violations and is thus based upon the same primary rights. Ms. Silvia's new meal and rest break claim was also at issue in the federal action. While she did not explicitly make a meal and rest break claim, she alleged she was owed specific amounts of restitution for meal and rest break violations as a result of EA's failure to pay her a prevailing wage. (Dkt. No. 156-6 at 10.) Thus, there is no question that the same primary rights at issue in this federal action are at issue in Ms. Silvia's new state action. *See Harris v. BestBuy Stores, L.P.,* 2018 WL 984220 * 4 (N.D. Cal. Feb. 20, 2018).

Ms. Silvia does not dispute that the primary rights at issue are essentially the same in both lawsuits; instead, she argues that the theory underpinning the causes of action in her state complaint are different from that posited in this action and therefore the relitigation exception does not apply. In other words, as this Court previously found, this action was based foundationally on Ms. Silvia's theory that she was entitled to a prevailing wage as a Lead Building/Construction Inspector whereas in her new state action her theory is that she was entitled to a prevailing wage as a Utility Locator. Therefore, argues Ms. Silvia, this Court did not "actually decide" whether she was entitled to a prevailing wage as a Utility Locator and therefore the "heavy artillery" of the

6

relitigation exception to the Anti-Injunction Act does not apply.

As explained above, however, under California's primary rights doctrine, Ms. Silvia's causes of action in the new state action arise from the same primary right as was actually litigated in this action: her entitlement to additional compensation for the same work period and the wage and hour violations that flow from that violation. Thus, Ms. Silvia's new claims are barred by claim preclusion. "Even when there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief. Hence a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though [the plaintiff] presents a different legal ground for relief." *Villacres v. ABM Industries, Inc.*, 189 Cal. App. 4th at 576; *see also Western Systems, Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992) ("Under res judicata, the prior judgment is conclusive not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.") (internal quotation marks and citation omitted). "The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is res judicata on matters which were raised or could have been raised, on matters litigated or litigable." *Villacres*, 189 Cal. App. 4th at 575-76.

Thus, there is no doubt that Ms. Silvia's claims against EA in the new action are barred by res judicata (claim preclusion). Indeed, Ms. Silvia's opposition does not contend otherwise; and even at oral argument she was unable to posit any reason why claim preclusion does not apply. Instead, her opposition rests on the argument that the "strict and narrow" relitigation exception to the Anti-Injunction Act does not apply to claim preclusion and is instead limited to issues actually litigated and decided by the federal court judge. *See Chick Kam Choo*, 486 U.S. at 148 ("an essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court.") Because this Court did not decide whether Ms. Silvia performed work as a Utility Locator that would have entitled her to a prevailing wage, and instead decided only that it was too

late for her to assert this new theory, she argues that the Court did not "actually decide" the issue that would trigger the relitigation exception.

In *Western Systems, Inc. v. Ulloa*, 958 F.2d 864 (9th Cir. 1992), however, the Ninth Circuit "disagree[d] with those Circuits which have concluded that the relitigation exception is limited to issues 'actually litigated' in a prior court proceeding." *Id.* at 870. The court specifically held that the exception encompasses state court litigation that is barred by claim preclusion (res judicata). *Id.* at 870-71. At oral argument the Court expressed skepticism that *Western System's* adoption of claim preclusion into the relitigation exception to the Anti-Injunction Act is still good law in light of the United States Supreme Court's decision in *Smith.* The Court has re-read *Smith*, however, and finds that it is not "clearly irreconcilable" with *Western Systems. See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (trial court is bound by Ninth Circuit law unless it is clearly irreconcilable with subsequently decided Supreme Court case). Indeed, while *Smith* uses the "actually litigated" language, it also expressly states that the relitigation exception "is designed to implement 'well-recognized concepts' of claim and issue preclusion." 564 U.S. at 306; *see also IntelliGender,* 771 F.3d at 1176-77 (applying claim preclusion to the relitigation exception to the Anti-Injunction Act). Thus, under binding Ninth Circuit law, because Ms. Silvia's state court claims are barred by claim preclusion, the relitigation exception to the Anti-Injunction Act applies.

Of course, while this Court has the power to enjoin the state court action as to Ms. Silvia's claims against EA, that does not mean that it must. *See Chick Kam Choo*, 486 U.S. at 151. Indeed, the Court takes seriously the Anti-Injunction Act's command to leave the state courts alone. Nonetheless, upon consideration of the procedural history of this case, and Ms. Silvia's litigation conduct, the Court concludes that there is no doubt that it should enjoin the state court from proceeding with Ms. Silvia's claims against EA. Ms. Silvia litigated her causes of action under the Building Inspector theory for three years, litigation that involved multiple discovery disputes and several dispositive motions. After Defendants moved for summary judgment the second time, and she realized she did not have sufficient evidence to support the theory upon which she had prosecuted her case for three years, she attempted to completely change her theory in opposition to summary judgment. The Court held she was barred by the Federal Rules from

8

doing so, in large part because she had no excuse for her late disclosure and the defendants would be prejudiced by allowing her to do so.  After the Court granted summary judgment, she appealed the judgment to the Ninth Circuit as is her right.  At the same time, however, she also instituted a putative class action in state court based on the same causes of action as are now on appeal in the Ninth Circuit.  She thus expects EA litigate the same causes of action in two courts (indeed, jurisdictions) at the same time and for two judicial systems to review those causes of action at the same time.  And she offers no reason, let alone a good reason, why the legal system should allow her to do so.  Indeed, she offers no explanation as to why the state court claims are not barred by claim preclusion; she only contends that the state court judge should make that judgment.  While the state court is well qualified to apply California claim preclusion rules, as there is no doubt that claim preclusion bars the state claims against EA, and requiring EA to litigate the same causes of action (even if only briefly) in two different jurisdiction at the same time is prejudicial to EA and a waste of judicial resources, the Court exercises its discretion to issue the requested injunction.

## CONCLUSION

For the reasons described above, EA's motion for permanent injunction enjoining Ms. Silvia's state court action against EA is GRANTED.

This Order disposes of Dkt. Nos. 200, 202, 204.

**IT IS SO ORDERED.**

Dated: June 22, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge